OHIO CREEK ANTHRACITE COAL CO. v. HINDS.

1. THE CESSATION OF OFFICIAL RELATIONS BETWEEN A CORPORATION AND ITS MANAGER MAY AFFECT CONTRACTUAL RELATIONS DEPENDENT THEREON.— The fact that the manager of a corporation, in settling accounts between the corporation and his mother, who was engaged in boarding its officers and employees, included debts due from himself as charges against her, does not justify the corporation, after he has ceased to be its manager, to charge her with his debts without her consent, even though it is done under his direction.

2. ITEMIZED ACCOUNTS AND AGREED BALANCES.— Where the itemized statement of the account sued on gives as a single item a balance agreed on at a certain date, and the evidence sustains the item, the admission of evidence of prior balances struck between the parties is not inconsistent with the statement.

3. PRACTICE IN CIVIL ACTIONS — WHEN RECOVERY MAY EXCEED CLAIM STATED.— Where an answer is filed and the action contested, plaintiff may, where the evidence justifies it, recover judgment for a larger amount than that prayed for it in the complaint.

4. CAUSE MAY BE REMANDED ON REVERSAL FOR CORRECTION OF ERROR AND ENTRY OF JUDGMENT WITHOUT RETRIAL.— Where a judgment for plaintiff is erroneous only because of the disallowance of a single item in the counter-claim, the cause may be remanded with directions to enter judgment for the amount due after deducting said item without a new trial.

*Appeal from Gunnison County Court.*

Messrs. THOMAS BROS. & WEGENER, for appellant.

CHIEF JUSTICE HELM delivered the opinion of the court.

In 1885 the appellant company was organized as a successor to the Mount Carbon Anthracite Coal Company, which at the same time ceased to exist. The husband of appellee was a director, also a member of the executive

committee, while her son was the superintendent and general manager of both companies.

In the spring of 1885 appellee took charge of the company's boarding-house, under an arrangement by which she was to receive from it $26 per month for each employee boarded. During the succeeding two years she obtained, from time to time, groceries and other merchandise, as well as cash, from the company. The keeping of her accounts, and the making of her settlements, appear to have been left almost entirely to the supervision of her son. He frequently had personal obligations of his own charged to his mother's account, and, while he remained, no objection was made because of the items thus entered against her. On the 1st of June, 1887, the son terminated all connection with the company, and soon afterwards left the state. He, however, directed that all claims thereafter made by his creditors against him be charged to his mother's account. Subsequent to the date last mentioned, bills aggregating a large amount, for which the son was responsible, were thus debited.

In September of the same year the present action was brought by appellee to recover a balance due her. The company pleaded a set-off or counter-claim, exceeding in amount the sum demanded in the complaint. All of its alleged counter-claim accruing subsequent to the 1st of June, 1887, was disallowed at the trial, and appellee recovered judgment for $1,902.

The practice of the son in occasionally charging personal items of his own to appellee's account while he was the company's superintendent and general manager, in and of itself, did not warrant a continuance thereof after his connection with the company had ceased. Nor did this practice, coupled with the fact that, while such superintendent and general manager, he attended to the settlement of her accounts, establish such an agency as enabled him to bind her by an express contract to operate after his departure. The evidence indicates that he arranged with the book-keeper to close his personal account on June 1st, when he

left, and to charge against appellee his personal debts there-
after accruing and presented to the company, either by
himself or his creditors; but there is nothing to show that
appellee assented to this arrangement or even knew of its
existence, and she expressly denies her son's authority to
make it.    While he was managing the company's business
and settling its accounts with her, it may have been a mat-
ter of mutual convenience to adjust certain personal items
in connection therewith in the manner adopted.    The son
was, to some extent, acting as the agent of both parties.
For a portion of the time he kept the company's books,
and always, to a greater or less extent, regulated its charges
and attended to their monthly liquidation.    It requires no
argument to show that the habit of sometimes settling, in
connection with appellee's account, items purely personal
to the son, grew out of, and was mainly dependent upon,
the son's official connection with the company and the con-
sequent business relationship arising between the parties;
but, when the business *status* thus created was wholly
changed by the son's absolute withdrawal from all rela-
tionship with the company, the mother should have been
consulted before an attempt was made to hold her for his
future debts.

Prior to the commencement of the trial, appellant made
demand, under section 63, Civil Code, for an itemized state-
ment of the account sued on.    Appellee's response to this
demand contained, among other items, the following: " To
board of defendant's officers and employees, as per balance
struck and agreed upon on or about July 1, 1887, $1,506.01."
At the trial appellee was permitted to state that the books
of the company were balanced at the end of each month,
and incidentally to give the different balances thus found
for the months beginning with October and ending with
July.    These prior balances need not have been mentioned,
but the reference thereto does not sustain counsel's objec-
tion.    Appellee testified that, on the 1st of July, the balance
found showed an indebtedness to her of $1,506.01.    In this
regard she was corroborated by McDougal, her attorney.

The testimony thus given directly sustains the statement rendered. No attempt was made to relate the different items constituting this particular balance. Therefore no response on our part is necessary to counsel's argument predicated upon the hypothesis that, under the general statement mentioned, appellee was permitted to enumerate different specific items, of which appellant had received no sufficient notice.

Nor was there error in rendering judgment for a larger amount than that prayed for in the complaint. An answer being filed, and appellee's claim being contested at the trial, she could recover such a sum as the evidence showed she was entitled to, regardless of the amount designated in this part of her pleading.

But among the items in the counter-claim disallowed by the court was one for $207.89, paid by the company to an employee of appellee. Appellee expressly admits that she requested the book-keeper to pay this claim. We cannot account for the court's failure to allow this credit, save upon the ground of inadvertence or mistake. For error in this particular the judgment will be reversed, but it is deemed unnecessary to re-adjudicate the entire controversy. The cause will be remanded, with directions that the court below enter a new judgment for the amount due after deducting the sum mentioned. Remaining objections are not considered of sufficient importance to require notice in this opinion.

*Reversed.*